UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

MONIQUE ADONOLA JOHNSON,

                 Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0534 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 18, 2016, Monique Adonola Johnson ("Defendant") pleaded guilty to one count of importation of cocaine, in violation of 21 U.S.C. § 952(a). The Court now sentences her and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to payment of the $100.00 special assessment, with no period of incarceration or supervised release.

## BACKGROUND

On September 18, 2015, the United States filed a Complaint against Defendant, alleging she had unlawfully imported cocaine, a Schedule II controlled substance, into the United States. *See* Compl. at 1, ECF No. 1. On October 16, 2015, the United States indicted Defendant on two counts: (1) importation of cocaine, in violation of 21 U.S.C. § 952(a), and (2) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Indictment at 1-2, ECF No. 6. On August 18, 2016, Defendant pleaded guilty to Count One of the Indictment pursuant to a Plea Agreement. *See* Plea Agreement ¶ 1, ECF No. 15.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Born in Georgetown, Guyana on April 11, 1986, *see* Presentence Investigation Report ("PSR") ¶ 27, ECF No. 17, Defendant has lived a difficult and tragic life. After her parents separated due to her father's drug addiction when she was three years old, *id.*, Defendant was raised by her mother in a low-income household, *id.* ¶ 29. Although her maternal grandparents

provided some financial assistance, her family lived in a trailer home and was often unable to afford food. *Id.* ¶ 29. From the age of five until Defendant was nineteen, her mother beat her multiple times a week, using items such as cooking utensils, leather belts, and sticks. *Id.* Indeed, the beatings only stopped once Defendant started working on her own. *Id.* Despite these difficult circumstances, Defendant maintains good relationships with her six siblings, *id.* ¶ 28, and her parents remain supportive of her, *id.* ¶ 27.

Defendant attended high school in Guyana from 2001 until her graduation in 2005, and she generally received very good grades. *Id.* ¶ 40. After graduating from high school, she maintained steady employment in Guyana, including as an insurance agent, a sales representative at a clothing store, a bill sorter, a finance/payroll employee, and a marketing representative. *See id.* ¶¶ 44-46. Eventually, she became the owner of her own clothing boutique. *Id.* ¶ 43.

In 2006, Defendant began a romantic relationship with Quincy Critchlow, who she married in 2015. *Id.* ¶ 33. Defendant stated that the relationship started out well but that Critchlow because physically abusive towards her starting in or around 2009. *Id.* From then until the instant offense, he would regularly knee her in the chest, choke her, or put a gun in her mouth or to her head, and he would do so in front of their child and neighbors. *Id.* Although Defendant was never hospitalized as a result of these beatings, she would visit the hospital to file a police report each time and has provided corroborating documentation from the Leonora Cottage Hospital in Guyana. *Id.* Around the time the abuse started, Defendant gave birth to a daughter, who currently resides in Guyana with Defendant's cousin. *Id.* Defendant speaks with her daughter every day and provides her with financial support, whereas Critchlow does not provide any financial support. *Id.*

3

On September 17, 2015, Defendant arrived at John F. Kennedy International Airport in Queens, New York aboard a flight from Guyana. *Id.* ¶ 3. She was selected for a Customs and Border Protection ("CBP") inspection and presented two suitcases for inspection, which she informed the CBP officers belonged to her and she had packed herself. *Id.* An inspection of the suitcases revealed that the bottom of the smaller one was unusually thick and gave off a strong chemical odor. *Id.* CBP officers then probed the bottom of the smaller suitcase, revealing a pasty substance that field-tested positive for cocaine. *Id.* A search of the larger suitcase also revealed a pasty substance that field-tested positive for cocaine. *Id.* ¶ 4. Defendant was then placed under arrest. *Id.* A subsequent Drug Enforcement Administration laboratory report revealed that the total net weight of cocaine seized as part of the instant offense was 4.656 kilograms. *Id.*

After her arrest, Defendant informed the Government that her husband, Critchlow, had demanded that she bring the luggage into the United States and that she was aware it contained cocaine, which had already been loaded into the suitcases when she received them. *Id.* ¶ 6. Her husband had told her to go to the Galaxy Hotel in Brooklyn, New York when she arrived and had said someone would meet here there. *Id.* He also told her that they would not have to worry about struggling to find money anymore when she returned to Guyana. *Id.* Due to a variety of factors, a controlled delivery was not attempted. *Id.* Per the Government, Defendant has made no prior trips, and she does not have any travel history to the United States. *Id.*

On September 21, 2015, Defendant was released on a $100,000.00 bond with pretrial reporting conditions and has been at liberty ever since. *Id.* at 1. The supervising Pretrial Services officer has advised that Defendant has complied with all Court-ordered conditions of release. *Id.* ¶ 2. Since her arrest, Defendant has continued to experience verbal abuse from her

husband over the phone, including threats that he intends to kill Defendant and beat her daughter. *Id.* ¶ 37. As a result, Defendant experienced thoughts of suicide and entered a mental health program called COPE (Counseling, Outreach, Prevention and Education) through Pretrial Services. *Id.* ¶¶ 36, 38. She attended sessions on a bi-weekly basis before completing the outpatient program on October 22, 2016. *Id.* ¶ 38. Although Defendant continues to experience depression, insomnia, and lack of appetite, she is no longer suicidal. *Id.* During her release, Defendant has also spent her free time volunteering several times a week at a church in New Jersey and a local community organization in Brooklyn. *Id.* ¶ 42.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter her and others from engaging in similar criminal activity in the future. The Court also takes into account Defendant's history of abuse at the hands of her husband (and his role in the instance offense), need to provide for and protect her young daughter, lack of criminal history, and good behavior while out on bond.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

5

Defendant pleaded guilty to one count of importation of cocaine, in violation of 21 U.S.C. § 952(a), for which she faces a maximum term of imprisonment of twenty years. *See* 21 U.S.C. § 960(b)(3). If a term of imprisonment is imposed, the Court must also impose a term of supervised release of at least three years, *see id.*, unless Defendant satisfies the mitigating factors in 18 U.S.C. § 3553(f), in which case the statutory minimum does not apply and the authorized term of supervised release is not more than three years, *see* 18 U.S.C. § 3583(b)(2). The mitigating factors are as follows:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). Because the offense is a Class C felony, Defendant may also be sentenced to a term of probation of not less than one nor more than five years, *see id.* § 3561(c)(1), with one of the following conditions unless extraordinary circumstances exist: a fine, restitution, or community service, *see id.* § 3563(a)(2). Defendant also faces a maximum fine of

$1,000,000.00, *see* 21 U.S.C. § 960(b)(3), and payment of the mandatory special assessment of $100.00, *see* 18 U.S.C. § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2D1.1(a)(5) applies to violations of 21 U.S.C. § 952(a) and, per Guidelines § 2D1.1(c)(6), sets a base offense level of twenty-eight. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(a)(5), (c)(6) (Nov. 2016) ("USSG" or "Guidelines"). Because Defendant has satisfied all five factors outlined in 18 U.S.C. § 3553(f) and Guidelines § 5C1.2, however, she is eligible for a two-level safety-valve reduction. *Id.* § 2D1.1(b)(17). Defendant was also a minimal participant in the offense, so a four-level reduction is applied. *Id.* § 3B1.2(a). Because the offense involved all of the factors in Guidelines § 2D1.1(b)(16)(A)-(C), Defendant is eligible for a further two-level reduction. *Id.* § 2D1.1(b)(16). In addition, Defendant's acceptance of responsibility by pleading guilty permits a three-level reduction. *Id.* § 3E1.1(a), (b). Accordingly, Defendant's total adjusted offense level is seventeen. Because Defendant has no criminal history, *see* PSR ¶¶ 20-25, she has a criminal history score of zero and a criminal history category of one, *see* USSG ch. 5, pt. A.

Given a total offense level of seventeen and a criminal history category of one, the Guidelines suggest a term of imprisonment of between twenty-four and thirty months. USSG ch. 5, pt. A. Defendant may also be sentenced to: a term of supervised release of one to three years because she meets the criteria set forth in 18 U.S.C. § 3553(f) and Guidelines § 5C1.2, so no

7

statutory minimum applies, *id.* § 5D1.2(a); a fine of between $6,000.00 and $1,000,000.00, *id.* § 5E1.2(c); and payment of the costs of prosecution, *id.* § 5E1.5. The Guidelines suggest Defendant is ineligible for probation. *Id.* § 5B1.1 cmt. n.2.

The U.S. Probation Department initially recommended a sentence of eighteen months of imprisonment followed by three years of supervised release with special conditions, noting that a sentence below the advisory Guidelines range appears sufficient in this case, considering "the nature and circumstances of the instant offense, and the history and characteristics of the defendant, including the alleged physical abuse, verbal abuse and emotional abuse suffered by the defendant . . . , in addition to her current mental health condition." *See* Sentence Recommendation at 1-2, ECF No. 17-1. After consenting to an additional two-point reduction of Defendant's offense level pursuant to Guidelines § 2D1.1(b)(16) during the sentencing hearing, however, Probation changed its recommended sentence to twelve months and one day. *See* Hr'g Tr., Apr. 25, 2017. Defendant's counsel has requested a non-incarceratory sentence, which would allow Defendant to proceed immediately to removal from the United States and return to her eight-year-old daughter in Guyana, from whom she has been separated for over sixteen months. *See* Def.'s Sentencing Mem. at 1, ECF No. 18. Counsel submits that "the inability to protect her child from a known and dangerous abuser" has been a fate worse than incarceration for Defendant and that a variance is supported by her "extenuating and extraordinary circumstances," including her lack of criminal history, cooperation with the Government, and documentation of domestic violence—as well as the role it played in the instance offense. *Id.* at 1, 7-8. In addition, counsel's sentencing memorandum includes letters of support from Defendant's friends, pastor, and aunt. *See id.* Ex. B-E. The Government agrees that a below-Guidelines sentence would not be unreasonable under the circumstances, noting that "the

8

defendant's personal history and the circumstances surrounding her criminal activity . . . are extraordinary." *See* Gov't Sentencing Mem. at 1, 3, ECF No. 19. Like Probation, the Government also consented to the additional two-point reduction of Defendant's offense level during the sentencing hearing. *See* Hr'g Tr., Apr. 25, 2017.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Guidelines § 5H1.3 contains a pertinent policy statement regarding mental and emotional health issues. Specifically, it provides that mental or emotional conditions "may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." USSG § 5H1.3. It also states that, in certain cases, "a downward departure may be appropriate to accomplish a specific treatment purpose" and that "[m]ental and emotional conditions may be relevant in determining the conditions of probation or supervised release." *Id.* Here, as described above, it is clear that Defendant has an unusual degree of mental and emotional health issues that distinguish this from typical cases. Accordingly, the Court notes that a downward departure may be warranted under the Guidelines.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Several other courts in this District have imposed below-Guidelines and even non-custodial sentences for individual drug couriers with no criminal records, particularly where, as

9

here, there are extenuating personal circumstances and no acts of violence by the defendant. *See, e.g., United States v. Nesbeth*, 188 F. Supp. 3d 179 (E.D.N.Y. 2016) (Block, J.) (one year of probation, including six months of home confinement and 100 hours of community service); Judgment, *United States v. Gunter*, 15-CR-0172 (E.D.N.Y. Aug. 19, 2016) (Townes, J.) (four days of time served, followed by three years of supervised release); Judgment, *United States v. De La Rosa*, 15-CR-0234 (E.D.N.Y. Apr. 8, 2016) (Dearie, J.) (one day of time served, followed by two years of supervised release); Judgment, *United States v. Elliott*, 14-CR-0574 (E.D.N.Y. Apr. 16, 2015) (Johnson, J.) (one day of time served, followed by two years of supervised release). For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in this case, *see id.* § 3663.

### CONCLUSION

A sentence of no incarceration and payment of the $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 27, 2017
　　　　Brooklyn, New York